USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/9/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
:
BNF NY REALTY, LLC,                                          :
                                    Plaintiff,               :
                                                             :     18 Civ. 3664 (LGS)
               -against-                                     :
                                                             :     **OPINION AND ORDER**
NISSAN MOTOR ACCEPTANCE CORP.,                               :
                                    Defendant.               :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

  Plaintiff BNF NY Realty, LLC ("BNFR") brings this action for fraudulent inducement and tortious interference of contract, and to quiet title to the property located at 450-460 Tarrytown Road, White Plains, New York (the "Tarrytown Property"). Defendant Nissan Motor Acceptance Corporation ("NMAC") -- the captive financing arm of Nissan North America, Inc. ("Nissan") -- moves to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As explained below, Defendant's motion to dismiss is granted.

## I. BACKGROUND

  The facts below are taken from the Complaint, exhibits attached to the Complaint and documents susceptible to judicial notice. *See TCA Television Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016). The facts alleged in the Complaint are assumed to be true for purposes of this motion. *See SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 175 (2d Cir. 2016).

### A. Purchase of Tarrytown Property and Financial Problems at Affiliated Dealerships

  On March 11, 2016, Plaintiff purchased the Tarrytown Property as the future site of White Plains Nissan. White Plains Nissan and affiliated dealerships ACIM NY, LLC d/b/a

Nissan of Manhattan ("ACIM"), ALIM NY, LLC d/b/a Infiniti of Manhattan ("ALIM"), MTKN, LLC d/b/a Nissan of Mt. Kisco ("MTKN") and BICOM NY, LLC d/b/a Jaguar Land Rover of Manhattan ("BICOM") (collectively, the "Affiliated Dealerships") are owned by BNF Partners NY, LLC ("BNFP"). BNFP and BNFR are owned by Alexander Boyko, Veniamin Nilva and Gary Flom.

In 2016, two of the Affiliated Dealerships, ACIM and ALIM, experienced "staggering losses." ACIM and ALIM's retail customer base in Manhattan was "completely decimated," due in part to Nissan's practice of referring customers to other dealerships in the area, and its refusal to share customer lists with ACIM and ALIM. The void in retail sales was filled by unprofitable "brokered sales" -- large volume sales to middle-men at steep discounts.

The financial problems at ACIM and ALIM were "openly discussed" with Nissan and NMAC. By July 2016, NMAC knew that two of the Affiliated Dealerships "were SOT." An "SOT" is a "sale out of trust," meaning that the dealership has not repaid the captive lender funds advanced for inventory sold.

**B.     Dealership Support Agreement**

On September 29, 2016, the parties reached an agreement (the "Dealership Support Agreement") pursuant to which NMAC would extend a $4 million revolving line of credit to be used for construction-related expenses (including expenses related to a construction project at 787 Eleventh Avenue, New York, New York (the "787 Property")) and a $3 million working capital loan to offset operational losses and address the SOTs. But on the eve of closing, NMAC transmitted a commitment letter for a single $7 million revolving line of credit (the "$7 Million Revolver"). By its terms, the $7 Million Revolver could be used only for leasehold improvements of the 787 Property. After Plaintiff voiced concerns, NMAC represented that the

$7 Million Revolver would be used in a "dual-capacity: construction and working capital loan." Based on this representation, ALIM executed the $7 Million Revolver. Following the closing, NMAC disbursed $3.4 million in construction-related advances directly to contractors working on the 787 Property.

As part of the Dealership Support Agreement, BNFP and BNFR executed a $12,188,500 promissory note in favor of NMAC (the "Note") and recorded a first mortgage in favor of NMAC on the Tarrytown Property (the "Mortgage"). The Mortgage included an "assignment of rents" clause, pursuant to which BNFR assigned to NMAC all "right, title and interest in and to all present and future leases," and all "rents . . . and other benefits of the Property and the Leases." BNFR was granted a license to collect rents "so long as an Event of Default [did] not exist"; but "[u]pon the occurrence of an Event of Default," BNFR's license to collect rents would "automatically terminate," and NMAC could, "without regard to the adequacy of any security for the obligations hereby secured . . . in its own name sue for or otherwise collect such Rents."

Plaintiff, BNFP, the affiliated dealerships, Flom, Nilva and Boyko also executed the Fourth Amended and Restated Cross-Guaranty, Cross-Collateral and Cross-Default Agreement (the "Cross-Guaranties"). The Cross-Guaranties provided, in relevant part, that "[t]he occurrence of a default under any one of the Loan Documents shall constitute a default under each other Loan Document, entitling Lender to exercise any or all of its rights and remedies under any or all of the Loan Documents." The Loan Documents included in the Cross-Guaranties included the dealerships' Wholesale Financing and Security Agreements with NMAC (the "WSAs") and the Mortgage. The Cross-Guaranties incorporated the Continuing Guaranty Provisions, which provided, in relevant part, that Plaintiff's obligations under the guaranties

3

were "absolute and unconditional under any and all circumstances . . . regardless of . . . any defense, offset or counterclaim."

On October 20, 2016, three days after closing, NMAC sent a letter to Plaintiff declaring a default and asserting that White Plains Nissan was out of trust. Around the same time, NMAC suspended all floorplan funding and reneged on its promise to disburse the $3 million working capital line -- funds that would have cured the White Plains Nissan SOTs. NMAC's plan was to "lull Dealers into a false sense of security by making a $3.4 million construction payment and then pulling financing without disbursing the capital loan that the Affiliated Dealerships were promised and in exchange for which[] the mortgage had been granted."

### C. *In re Nissan* Litigation

On January 20, 2017, ACIM, ALIM and BICOM filed suit against Nissan and NMAC in New York State Supreme Court asserting various statutory and common law claims. Nissan and NMAC removed the action to the Southern District of New York on January 31, 2017. *See In re Nissan Dealership Litigation*, 17 Civ. 729 (S.D.N.Y.) On March 3, 2017, NMAC filed a Counterclaim and Third-Party Complaint against Plaintiff, the affiliated dealerships, BNFP, Boyko, Nilva and Flom seeking, *inter alia*, enforcement of the guaranties and damages.

During the course of the *Nissan* litigation, both parties sought leave to amend their pleadings in order to assert additional claims. With leave of court, NMAC filed an Amended Counterclaim and Third-Party Complaint, which added a claim to foreclose the Tarrytown Property. BNFR proposed to amend its pleadings to assert additional claims against NMAC, including fraudulent inducement, but the proposed amendments were denied on the ground that they were untimely. Despite this denial, BNFR filed the amended pleadings, which were subsequently struck from the record. In striking the pleadings, the court in *Nissan* observed that

4

the end of fact discovery was weeks away, and that the proposed claims against NMAC and other parties would "add significant new scope to the case."

On April 10, 2018, NMAC sent a demand letter to Ray Catena, who had been paying rent to Plaintiff to store vehicles on the Tarrytown Property. The demand letter asserted that due to the default, Plaintiff's right to collect rent had been terminated and Catena was to turn over to NMAC all rents and a schedule of rents paid to date.

On May 8, 2018, the court in *Nissan* granted summary judgment to NMAC on its claim to enforce the guaranties. *See In re Nissan Litig.*, 17 Civ. 729 (KBF), 2018 WL 2113228, at *7 (S.D.N.Y. May 8, 2018). The court found that White Plains Nissan had sold out of trust, which constituted a breach of the applicable WSA. *See id.* The court also found that Plaintiff had acknowledged its underlying debt to Defendant, and that the Cross-Guaranties incorporated the "absolute and unconditional" clause of the Continuing Guaranty Provisions, thereby barring Plaintiff from asserting affirmative defenses such as fraudulent inducement. *See id.* at *6–7. Accordingly, the court held that NMAC had established its right to enforce the Cross-Guaranties and underlying loans. *See id.* at *7. The court then held that NMAC had established its right to foreclose on the Mortgage, which was included in the Cross-Guaranties and which was therefore in default based on the breach of the WSA. *See id.* at *8. Finally, the court found that Plaintiff's challenge to the enforceability of the Mortgage was also barred by the "absolute and unconditional" clause. *See id.*

On September 11, 2018, the court in *Nissan* granted NMAC's motion for damages in the amount of $40,183,836.19, and terminated NMAC from the case. *In re Nissan Litig.*, 17 Civ. 729 (KBF), 2018 WL 4328833, at *1 (S.D.N.Y. Sept. 11, 2018). On October 10, 2018, Plaintiff

and affiliated parties filed an interlocutory appeal from the court's May 8 and September 11, 2018, orders. On November 30, 2018, the parties filed a stipulation withdrawing the appeal.

## II. STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016).

"A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014); *accord Lopez v. City of New York*, No. 17 Civ. 3014, 2017 WL 4342203, at *7 (S.D.N.Y. Sept. 28, 2017). Likewise, "courts may dismiss a claim on . . . collateral estoppel grounds on . . . a motion to dismiss." *Vaccaro v. Bank of America, N.A.*, No. 13 Civ. 2484, 2016 WL 4926201 (S.D.N.Y. Sept. 15, 2016) (citations omitted); *see Flaherty v.*

*Lang*, 199 F.3d 607, 612 (2d Cir. 1999); *see also Overview Books, LLC v. United States*, 438 Fed. App'x 31, 33–34 (2d Cir. 2011) (summary order).

### III. DISCUSSION

#### A. Count I -- Fraudulent Inducement

Count I of the Complaint is dismissed because the fraudulent inducement claim is barred under the doctrine of *res judicata*, or claim preclusion.

The threshold inquiry is whether federal or state preclusion law applies. This issue was not addressed by the parties, who assumed in their memoranda of law that federal law applies. In *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the Supreme Court held that the claim preclusive effects of a federal diversity judgment are determined by "the law that would be applied by state courts in the State in which the federal diversity court sits." *Id.* at 508. This principle also applies in successive diversity actions. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) ("The law governing the doctrine of *res judicata* in a diversity action is 'the law that would be applied by state courts in the State in which the federal diversity court sits.'" (quoting *Semtek,* 531 U.S. at 508)); *see also Ananta Group, Ltd. v. Jones Apparel Grp., Inc.*, 230 Fed. App'x 39, 40 (2d Cir. 2007) (summary order) (noting that "New York's law of issue preclusion . . . applies in this diversity suit"). *But see Industrial Risk Insurers v. Port Authority of N.Y. and N.J.*, 493 F.3d 283, 388 (2d Cir. 2007) (stating in dicta that "some doubt exists as to whether New York state law or federal law controls" the preclusion analysis in successive diversity actions). Thus, the preclusion analysis in this case is governed by New York law.

"In New York, res judicata, or claim preclusion, bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits

7

rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008) (citations omitted). "Under New York's transactional approach to the rule, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Josey v. Goord*, 880 N.E.2d 18, 20 (N.Y. 2007) (quoting *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981)).

Importantly, although New York is a permissive counterclaim jurisdiction, *see* CPLR § 3011, in *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 36 N.Y.S.3d 11 (1st Dep't 2016), the First Department held that New York's *res judicata* doctrine bars claims that constitute compulsory counterclaims in prior federal actions. *See id.* at 15. Although the Court of Appeals affirmed on narrower grounds -- holding that such claims are barred under federal claim preclusion law in cases involving a mix of federal and state issues, *Paramount Pictures*, 96 N.E.3d 737, 742 (2018) -- Judge Rivera's concurrence clarified that state claim preclusion rules would produce the same result. "Here, the final judgment in the prior action was entered by a federal court, under a system which has adopted a compulsory counterclaim pleading requirement. We give res judicata effect to the prior federal judgment as it stands under that pleading regime, with its attendant consequences for future litigation." *Paramount Pictures*, 96 N.E.3d at 751 (citations omitted).

Applying these principles, Count I of the Complaint is barred under New York's *res judicata* doctrine. First, the transactions at issue in this case -- (1) BNFR's execution of the loan documents pursuant to the Dealership Support Agreement, (2) the default due to the sale of vehicles out of trust at White Plains Nissan and (3) NMAC's reneging on its obligations to

disburse the working capital loan -- are the same transactions that were at issue in *Nissan*. *See Nissan*, 2018 WL 2113228, at *1–4, 6–7. Second, a grant of summary judgment is a "judgment on the merits" under New York law. *See Brown v. Christopher Street Onwers Corp.*, 681 N.Y.S.2d 255, 256 (1st Dep't 1998). Third, BNFR -- the party against whom *res judicata* is invoked -- is a party to the previous action.

BNFR's arguments that *res judicata* does not apply are unavailing. First, BNFR argues that *res judicata* is inapplicable because there was no final judgment in *Nissan*, i.e., the court's order granting partial summary judgment was interlocutory. But this is no longer the case; final judgment was entered in *Nissan* with respect to NMAC on January 4, 2019. Partial final judgment may be entered in order to produce claim preclusive effects in other cases. *See Shamley v. ITT Corp.*, 869 F.2d 167, 170 (2d Cir. 1989); *accord Arista Records, Inc. v. MP3Board, Inc.*, No. 00 Civ. 4660, 2003 WL 21524529, at *3 (S.D.N.Y. July 3, 2003). Entry of partial final judgment in *Nissan* was proper for the reasons stated in the court's January 4 Order.

Second, BNFR argues that its affirmative claim of fraudulent inducement here is not barred by the court's holding in *Nissan* that BNFR had contractually waived affirmative defenses, including fraudulent inducement, on account of the "absolute and unconditional" clause of the Continuing Guaranty Provisions. This argument misapprehends the nature of *res judicata*; the question is not necessarily whether a particular holding in *Nissan* bars a subsequent claim here, but rather whether the two cases are "based upon the same transaction or series of connected transactions." *Spitzer*, 894 N.E.2d at 12. Because the answer to that question is yes, *res judicata* applies.

Third, BNFR argues that the fraudulent inducement claim was outside of the scope of the *Nissan* case. Again, this argument fails because the fraudulent inducement claim is based on the

9

same series of transactions at issue in *Nissan*. Although the court in *Nissan* denied BNFR leave to amend its pleadings to add a fraudulent inducement counterclaim, this was solely on account of BNFR's failure to timely move for leave to amend, and not because the claim was beyond the scope of the case. While it is true that the court in *Nissan* stated that BNFR's proposed claims against NMAC and other parties would "add significant new scope to the case," this was in response to BNFR's *second* attempt to add the claims, on the eve of the fact discovery deadline. Adding the claims certainly would have broadened the scope of the litigation at that late juncture. At no point, however, did the court suggest that BNFR could not have brought the claims in the first instance.

Fourth, BNFR argues that the court's denial of leave to amend in *Nissan* does not bar the fraudulent inducement claim. This is technically true; the denial of leave to amend does not *itself* bar the claim. But the claim is still barred because it is based on the same series of transactions at issue in *Nissan*. The parties cite *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000), a case that is instructive, although decided under a federal *res judicata* analysis. In *Curtis*, the court differentiated between claims that arise before a pleading is filed and claims that arise after. Claim preclusion does not bar subsequent litigation of a claim arising after a pleading is filed in the first case. "The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims." *Id.* at 139. In this context, a denial of leave to amend "will not inevitably preclude subsequent litigation of those claims" unless such denial was "on the merits." *Id.* In contrast, *res judicata* does bar litigation of a claim that arose before a pleading was filed in the first case, even if the claim was not raised due to a procedural default. As the Court stated in *Curtis*: "If plaintiffs had timely raised those allegations, they would have been heard in *Curtis I*

10

[the previously filed action]. By filing them in a second action, plaintiffs attempted to avoid the consequences of their delay. It was not an abuse of discretion to prevent them from doing so." *Id.* at 140.

Although *Curtis* does not supply the governing *res judicata* rule in this diversity case applying state preclusion law, it does set forth a sensible approach that accords with New York's *res judicata* doctrine. If parties could evade the consequences of their procedural defaults by filing a new suit, they could freely disregard any deadline a court set. This would undermine the core purposes of New York's *res judicata* doctrine: "to ensure finality, prevent vexatious litigation and promote judicial economy." *Xiao Yang Chen v. Fischer*, 843 N.E.2d 723, 725 (N.Y. 2005) (citations omitted). Count I of the Complaint is dismissed.

### B. Count II -- Quiet Title

Count II, the quiet title claim, is also barred under New York's *res judicata* doctrine, because the claim is "based upon the same . . . series of connected transactions" that was at issue in *Nissan*. *Spitzer*, 894 N.E.2d at 12. The Complaint alleges that "NMAC's alleged interest in the Tarrytown Property is void and unenforceable as a matter of law," whereas in *Nissan*, the court upheld the enforceability of the Mortgage and other loan documents. *See Nissan*, 2018 WL 2113228, at *8. Also, the court's judgment of foreclosure bars a subsequent action to quiet title under New York law. *See Sancar Mgmt. v. OneWest Bank, FSB*, 84 N.Y.S. 3d 794, 795 (2d Dep't 2018) ("A judgment of foreclosure and sale is final as to all questions at issue between the parties, and concludes all matters of defense which were or could have been litigated in the foreclosure action." (quoting *Tromba v. E. Fed. Sav. Bank, FSB*, 48 N.Y.S.3d 501, 502 (2d Dep't 2017))).

BNFR's arguments that *res judicata* does not bar its quiet title claim are unavailing. First, BNFR argues that the *Nissan* court's judgment is not final. But, as discussed, final judgment was entered in *Nissan* with respect to NMAC on January 4, 2019.

Second, BNFR argues that there is a "difference in the issues," without specifying what they might be. To the extent that BNFR's quiet title claim involves different issues than the ones that were before the *Nissan* court, this point is irrelevant. New York's transaction-based claim preclusion doctrine does not require a complete identity of issues. *See Spitzer*, 894 N.E.2d at 12. For these reasons, Count II of the Complaint is dismissed.

### C.  Count III -- Tortious Interference

The Complaint fails to state a claim for tortious interference because it does not sufficiently allege that NMAC acted improperly in procuring the alleged breach. To state a claim for tortious interference, a plaintiff must allege "the existence of its valid contract with a third party, defendant's knowledge of that contract, defendant's intentional and improper procuring of a breach, and damages." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007); *accord Normandy Real Estate Partners LLC v. 24 E. 12th Street Assoc. LLC*, 81 N.Y.S.3d 33, 35 (1st Dep't 2018).

The Complaint alleges that "NMAC instructed Catena to (i) disregard its obligations under the [applicable lease]; (ii) provide NMAC with a rent schedule of all rents received to date and (iii) immediately turn over all rents to NMAC." Consequently, "BNFR has not received its rent for April 2018." The Complaint also alleges various ways that NMAC had not obtained authority to obtain the rents from Catena, including that any assignment of rents in the Mortgage "was void because . . . the mortgage was fraudulently induced[] and . . . contrary to New York law;" and that the Mortgage "was adequately secured."

12

These allegations that NMAC acted without authority cannot be credited, even on a motion to dismiss, because NMAC was authorized to take these actions under the Mortgage, which is attached to the Complaint. The assignment of rents clause provides that upon an event of default, BNFR's license to collect rents will terminate and NMAC can sue or otherwise collect such rents. Once NMAC declared a default based on the White Plains SOTs, it was entitled to demand the Catena rents. The Complaint's allegation that the Mortgage was adequately secured is irrelevant as the assignment of rents clause provides that it "is intended to be an absolute assignment from Borrower to Lender and not merely the passing of a security interest." Plaintiff's assertion that the assignment of rents clause does not include the Catena rents is rejected because the provision is unambiguous on its face, does not carve out the Catena or any other rents, and is therefore enforceable according to its terms. *See Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 91 N.E.3d 1186, 1193 (N.Y. 2017) (stating that a contract "that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (quoting *Marin v. Constitution Realty, LLC*, 71 N.E.3d 530, 534 (N.Y. 2017))).

New York's issue preclusion doctrine bars the Complaint's assertion that the Mortgage is unenforceable because it was fraudulently induced. Issue preclusion "may be invoked in a subsequent action or proceeding to prevent a party from relitigating an identical issue decided against that party in a prior proceeding." *ABN AMRO Bank, N.V. v. MBIA Inc.*, 952 N.E.2d 463, 473 (N.Y. 2011) (alterations omitted). The doctrine bars relitigation of an issue that has "necessarily been decided in a prior action and is decisive of the present action" if there has been "a full and fair opportunity to contest the decision now said to be controlling." *Tydings v. Greenfield, Stein & Senior, LLP*, 897 N.E.2d 1044, 1046 (N.Y. 2008) (alterations and quotations omitted).

The court in *Nissan* held that the Cross-Guaranties and Mortgage were enforceable against BNFR. *See Nissan*, 2018 WL 2113228, at *7–8. The court further held that because of the absolute and unconditional clause, BNFR could not invoke fraudulent inducement to escape its obligations under the loan documents. *See id.* These holdings, which Plaintiff vigorously contested, were "necessarily . . . decided in [the] prior action and [are] decisive of the present action." *Tydings*, 897 N.E.2d at 1046. That is, in demanding the Catena rents, NMAC seeks to enforce agreements that the *Nissan* court already held were enforceable. BNFR cannot relitigate the enforceability issue in this forum.

Plaintiff argues that the court's prior holdings in *Nissan* are inapplicable on the ground that they are "clearly . . . limited to affirmative defenses." Plaintiff never sought to assert tortious interference as an affirmative defense in *Nissan*, and the court's affirmative defense holding is not what precludes the tortious interference claim in this case. Plaintiff may be suggesting that the holdings in *Nissan* enforcing the Mortgage and Cross-Guaranties should be disregarded because the court held that the absolute and unconditional provision barred the assertion of an affirmative defense. In other words, Plaintiff may be arguing that when a court finds an agreement enforceable and holds that an absolute and unconditional guaranty bars assertion of a defense, the enforceability issue can be relitigated by filing a new suit that recasts the defense as an affirmative basis to attack the agreement. This proves too much; if debtors could so easily evade the consequences of entering into absolute and unconditional guaranties, there would be no reason to have such guaranties. It is well-established that "[u]nder New York (and every other state's) law, parties are not free to interpret a contract in a way that frustrates the purpose of that contract or that makes any provision of the contract meaningless." *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 624 (S.D.N.Y. 2010).

Plaintiff cites *CIT Group/Commercial Services, Inc. v. Prisco*, 640 F. Supp. 2d 401 (S.D.N.Y. 2009), for the proposition that an affirmative defense barred by an absolute and unconditional guaranty can be brought as an offensive claim in a separate action. Plaintiff cites *Prisco* in relation to the fraudulent inducement claim, but presumably would contend that the proposition is also applicable to the tortious interference claim, which depends on the assertion that the Mortgage was fraudulently induced. But the comparison between *Prisco* and this case elides a key difference -- in *Prisco*, the affirmative defenses/claims did not arise under the financing agreements that were subject to the absolute and unconditional guaranties and that were at issue in that case. *See Prisco*, 640 F. Supp. 2d at 410. Rather, "[t]hey relate[d] to various other aspects of the parties' commercial relationship." *Id.* Here, however, allowing Plaintiff to relitigate the enforceability of the Mortgage would contravene New York's issue preclusion doctrine and frustrate the purpose of the Continuing Guaranty Provisions.

BNFR next argues that a broad rent assignment clause is not enforceable under New York law, citing *In re Soho 25 Retail, LLC*, No. 10-15114, 2011 WL 1333084 (Bankr. S.D.N.Y. Mar. 31, 2011). BNFR misconstrues the principle set forth in *Soho 25 Retail*; an "absolute assignment" refers to the assignment's self-executing nature. *See id.* at *5. That is, an absolute assignment may excuse a lender from taking the affirmative steps that are usually required to enforce an assignment of rents clause. Here, the question of whether absolute assignments are enforceable under New York law is irrelevant because NMAC has taken sufficient affirmative steps to enforce the assignment of rents clause. Specifically, NMAC (1) asserted a claim in *Nissan* to foreclose the Tarrytown Property, (2) filed a Notice of Pendency and (3) wrote a demand letter to Catena to assert its rights to the rents. *See Soho 25 Retail*, 2011 WL 1333084, at *7 ("[A]ffirmative steps can include: requesting the appointment of a receiver to collect the

rents, demanding or taking possession, commencing foreclosure proceedings, or seeking an order for the sequestration of rents. Notably, the case law lists these examples of affirmative steps in the disjunctive." (citations omitted)).

Finally, NMAC argues that issue preclusion does not apply to the tortious interference claim, "because that doctrine only applies to claims that were actually brought." On the contrary, issue preclusion does not require an identity of claims; it requires an identity of *issues*. *See Tydings*, 897 N.E.2d at 1046. As discussed, the enforceability of the Mortgage, which is decisive of this action, was necessarily decided in *Nissan*. Accordingly, Count III of the Complaint is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to close the motion at Docket No. 15 and close the case.

Dated: January 9, 2018
      New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**